IN THE SUPREME COURT OF MISSISSIPPI

NO. 2009-IA-01111-SCT

*SIDNEY CARLTON GORTON, M.D.*

*v.*

*SHUMAERA RANCE, INDIVIDUALLY, AND ON
BEHALF OF DEXTER JORDAN, JR., DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/2009 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GAYE NELL LOTT CURRIE |
| ATTORNEYS FOR APPELLEE: | PRECIOUS TYRONE MARTIN |
| | GERALD A. MUMFORD |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED - 01/27/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

CHANDLER, JUSTICE, FOR THE COURT:

¶1.     Shumaera Rance filed a complaint in the Circuit Court of Humphreys County against

Dr. Sidney Carlton Gorton, Dr. Daisy Thomas, Humphreys County Memorial Hospital

(HCMH), and John Does 1-5 for the wrongful death of her ten-month-old son, Dexter Jordan,

Jr.  Dr. Gorton filed a motion for summary judgment that alleged he was employed by

Greenwood Leflore Hospital, an entity covered by the Mississippi Tort Claims Act (MTCA).

*See* Miss. Code Ann. §§ 11-46-1 to 11-46-23 (Rev. 2002).  Dr. Gorton argued that Rance had

failed to provide a timely notice of claim under the MTCA and that the MTCA's one-year

statute of limitations had expired, barring Rance's claims. *See* Miss. Code Ann. § 11-46-11(3) (Rev. 2002). The trial court denied the motion for summary judgment.

¶2. This Court granted Dr. Gorton's petition for an interlocutory appeal. We find no genuine issue of material fact in Dr. Gorton's assertions that Greenwood Leflore Hospital employed him at the time of the allegedly tortious conduct, and that the MTCA applied to Rance's claims against Dr. Gorton. Because Rance failed to provide timely notice of claim to Greenwood Leflore Hospital, and her complaint was filed outside the MTCA's one-year statute of limitations, we reverse the denial of summary judgment and render a judgment in favor of Dr. Gorton.

## FACTS

¶3. Rance's complaint alleged that Jordan had received treatment and tragically died at HCMH. On August 7, 2007, Jordan was admitted to HCMH with vomiting and signs of pneumonia. Shortly thereafter, Jordan experienced difficulty breathing. Jordan's treating physician was Dr. Thomas, but the medical records reflect that Jordan was admitted to Dr. Gorton's service and the case was discussed with him. Early the following morning, Dr. Thomas determined that Jordan needed additional medical assistance and requested air transportation to the University of Mississippi Medical Center. Jordan died before leaving HCMH's grounds. His autopsy report stated that his cause of death was pneumonia.

¶4. On July 1, 2008, Rance served a notice of claim on the chief executive officer of HCMH as required by the MTCA. Miss. Code Ann. § 11-46-11(3) (Rev. 2002). She filed suit on November 5, 2008. Rance claimed that, due to a lack of adequate and immediate medical care, Jordan had experienced unnecessary pain, suffering, and death. Rance

2

contended that the defendants' conduct constituted negligence, gross negligence, and reckless disregard for Jordan's rights, justifying punitive damages. Dr. Gorton filed a separate answer and affirmative defenses, including statute of limitations, jurisdiction, and venue under the MTCA. Later, Dr. Gorton filed a motion to dismiss or, in the alternative, a motion for summary judgment with attached contracts showing his status as an employee of Greenwood Leflore Hospital, a government-owned hospital subject to the MTCA.

¶5. Rance filed a response to the motion. She asserted that, despite having conducted a thorough investigation prior to filing suit, she had failed to discover Dr. Gorton's employment with Greenwood Leflore Hospital until the motion for summary judgment had been filed. Rance admitted that Dr. Gorton had entered into a contract with Greenwood Leflore Hospital, but argued that it provided for only a courtesy membership on Greenwood Leflore Hospital's staff and privileges on the active medical staff of HCMH. In a supplemental response filed on June 3, 2009, Rance asserted that discovery was necessary to determine the dates of Dr. Gorton's employment by Greenwood Leflore Hospital. Dr. Gorton filed supplemental materials in reply to the response to the motion for summary judgment. After a hearing, the trial court entered an order that stated the motion was denied because a genuine issue of material fact was in dispute; the order did not provide further explanation.

## STANDARD OF REVIEW

¶6. The standard of review for the grant or denial of a motion for summary judgment is de novo. *Stringer v. Trapp*, 30 So. 3d 339, 341 (Miss. 2010). Summary judgment properly may be granted where "the pleadings, depositions, answers to interrogatories and admissions

3

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." M.R.C.P. 56(c). "If no genuine issue of material fact exists and the moving party is entitled to summary judgment as a matter of law, summary judgment should be entered in that party's favor." *Trapp*, 30 So. 3d at 341. The burden rests on the moving party. *Id*. The trial court views all evidence before it in the light most favorable to the nonmoving party. *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 649-50 (Miss. 2009).

¶7. "Once the absence of genuine material issues has been shown, the burden of rebuttal falls upon the non-moving party. To survive summary judgment, the non-moving party must produce specific facts showing that there is a genuine material issue for trial." *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1213-14 (Miss. 1996); *see also* M.R.C.P. 56(e). Therefore, "[t]o avoid summary judgment, the non-movant must set forth specific facts that demonstrate a genuine issue of a material fact that merits trial instead of mere unsubstantiated allegations." *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1038 (Miss. 2007) (citing *Richmond v. Benchmark Constr. Corp.*, 692 So. 2d 60, 61 (Miss. 1997)). "The party opposing the motion must be diligent." *Richmond*, 692 So. 2d at 61-62 (citing *Grisham v. John Q. Long V.F.W. Post*, 519 So. 2d 413, 415 (Miss. 1988)). However, "[s]ummary judgment is mandated where the respondent has failed 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Dearman v. Christian*, 967 So. 2d 636, 639 (Miss. 2007) (citations omitted).

4

¶8. The nonmoving party "remains silent at her peril." *Fruchter v. Lynch Oil Co.,* 522 So. 2d 195, 198-99 (Miss. 1988). "[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." M.R.C.P. 56(e); *see also* **Brown v. Credit Center, Inc.**, 444 So. 2d 358, 362 (Miss. 1984).

## LAW AND ANALYSIS

### I. The applicable provisions of the MTCA

¶9. The MTCA provides immunity to government entities, such as public hospitals, and to government employees under specified circumstances. *See* Miss. Code Ann. §§ 11-46-1 to 11-46-23 (Rev. 2002). The MTCA provides the exclusive remedy for money damages against a governmental entity or its employee. Miss. Code Ann. § 11-46-7(1) (Rev. 2002). However, a party may join an employee, in his or her representative capacity, in an action against a governmental entity "if the act or omission complained of is one for which the governmental entity may be liable." Miss. Code Ann. § 11-46-7(2) (Rev. 2002). But an employee cannot be personally liable for any acts or omission that occurred within the course and scope of his or her duties. Miss. Code Ann. § 11-46-7(2).

¶10. Public hospitals are covered by the MTCA. Miss. Code Ann. § 11-46-1(j) (Rev. 2002). A party claiming injury under the MTCA against a governmental entity, such as a public hospital, must file a notice of claim with the chief executive officer of the governmental entity ninety days prior to maintaining an action. Miss. Code Ann. § 11-46-11(1) (Rev. 2002). The MTCA also provides a one-year statute of limitations on all actions

5

brought under its provisions which is tolled by a timely-filed notice of claim. Miss. Code Ann. § 11-46-11(3) (Rev. 2002).

> **II.** **Whether there was a genuine issue of material fact that Dr. Gorton was an employee of a public hospital entitled to the protections of the MTCA.**

¶11. It is undisputed that Greenwood Leflore Hospital is a public hospital entitled to the protections of the MTCA. Therefore, its employees also have the explicit extension of the MTCA's protection. Miss. Code Ann. § 11-46-7 (Rev. 2002). Dr. Gorton argues that the documentation before the trial court established his status as an employee of Greenwood Leflore Hospital and it was not a genuine issue of material fact.

¶12. We agree that there was no genuine issue of material fact that Dr. Gorton was an employee of Greenwood Leflore Hospital on August 7-8, 2007, the dates relevant to this appeal.[1] To support Dr. Gorton's assertion that he was employed by Greenwood Leflore Hospital at all relevant times, he provided: (1) an affidavit from Margaret Buchanan, the Director of Human Resources at Greenwood Leflore Hospital; (2) his own affidavit stating that his dates of employment were September 29, 1999, through October 31, 2007; (3) a copy of his original employment contract, effective September 29, 1999; (4) a copy of an amendment to the employment contract that extended his employment contract from September 1, 2004, through August 31, 2009; (5) a copy of a mutual termination of the employment agreement providing that Dr. Gorton's employment would terminate August 1,

_____

[1] In her brief, Rance admits that Dr. Gorton was an employee of Greenwood Leflore Hospital. She states that "[u]nbeknownst to Rance, Dr. Gorton was employed by Greenwood-Leflore Hospital ('Greenwood Leflore Hospital') and worked at HCMH under the auspices of a contract between HCMH and Greenwood Leflore Hospital."

6

2007; (6) a copy of an amendment to the mutual termination-of-employment agreement, providing that Dr. Gorton's employment would terminate on November 1, 2007; and (7) a copy of a report of termination providing that Dr. Gorton's last day of employment was October 31, 2007.

¶13. In her affidavit, Buchanan stated that Greenwood Leflore Hospital is a community hospital owned by the City of Greenwood and Leflore County. Buchanan stated that Dr. Gorton was an employee of Greenwood Leflore Hospital during the time of the events set forth in Rance's complaint. Buchanan related that, while in medical school, Dr. Gorton had entered into an employment contract with Greenwood Leflore Hospital dated September 29, 1999, and, pursuant to that contract, Greenwood Leflore Hospital continuously had employed Dr. Gorton from September 1, 2004, through October 31, 2007. Buchanan stated that, according to the conditions of Dr. Gorton's employment with Greenwood Leflore Hospital, he practiced in the Gorton Clinic and saw patients at HCMH.

¶14. In Dr. Gorton's affidavit, he stated that he had been employed continuously by Greenwood Leflore Hospital from September 29, 1999, to October 31, 2007.[2] Dr. Gorton stated that the parties initially had agreed to terminate his employment effective August 1,

---

[2] The discrepancy in the start dates of Dr. Gorton's employment provided by Buchanan and Dr. Gorton is immaterial to the discussion, because both agree that he was employed by Greenwood Leflore Hospital on August 7-8, 2007, the dates relevant to Rance's claims. The September 29, 1999, contract stated that Dr. Gorton's employment would be for a period of five years from the date Dr. Gorton moved to Belzoni, Mississippi, and commenced his practice of medicine as a full-time employee of Greenwood Leflore Hospital and member of the active medical staff of HCMH. It is evident from the amendment to the employment agreement that this five-year period began on September 1, 2004.

7

2007, but that before August 1, 2007, the parties had agreed to extend the employment contract to November 1, 2007. The reason for the delay was to "allow completion of documents to effect a change of ownership of the Gorton Clinic from Greenwood Leflore Hospital to Dr. Mac Gorton and Dr. Sidney Carlton Gorton."

¶15. The employment agreement between Greenwood Leflore Hospital and Dr. Gorton provided that it was for a five-year term from the date Dr. Gorton commenced his practice of medicine under the conditions specified. The contract provided that Dr. Gorton's responsibilities as a full-time employee of Greenwood Leflore Hospital required him to serve as the physician for the Gorton Clinic and to become a member of HCMH's active staff to provide oversight and care of the clinic's and HCMH's patients. Later, Greenwood Leflore Hospital and Dr. Gorton executed an amendment to the employment agreement. This document established that Dr. Gorton's employment dates were September 1, 2004, through August 31, 2009.

¶16. On April 16, 2007, Greenwood Leflore Hospital and Dr. Gorton executed a mutual termination of the employment agreement. The termination agreement set the date of termination as August 1, 2007. However, the parties also executed an amendment to the termination of employment agreement dated "August ___ 2007," that extended Dr. Gorton's date of termination to November 1, 2007. Dr. Gorton and a representative of Greenwood Leflore Hospital signed this amendment. A copy of a report of termination for Dr. Gorton noted the following dates: (1) a hire date of August 31, 2004, (2) a last date worked of October 31, 2007, and (3) a date of termination of October 31, 2007. The report also stated that the details of termination were "change ownership."

8

¶17. Rance offered no evidence to refute Dr. Gorton's assertion that, on the relevant dates of August 7-8, 2007, he was an employee of Greenwood Leflore Hospital and subject to the protections of the MTCA. Before the trial court, Rance took issue with the fact that the extension of the termination agreement did not specify the date in August 2007 that it was executed, and with the execution date of the amendment to the employment agreement. She claimed that, while Greenwood Leflore Hospital's representative signed the amendment to the employment agreement on August 26, 2005, Dr. Gorton's signature was dated August 24, 2009, a future date that had not occurred. In response to this allegation, Dr. Gorton stated in his affidavit that the date on the amendment "reads 'August 24, 2005,' not August 24, 2009."

¶18. We find that the documents submitted by Dr. Gorton established that he was employed by Greenwood Leflore Hospital on the relevant dates of August 7-8, 2007. Rance provided no specific facts that demonstrate a genuine issue of material fact that merits trial. Instead, Rance provided mere unsubstantiated allegations. *See **Green***, 954 So. 2d at 1038. Therefore, the evidence before the trial court failed to create a genuine issue of material fact as to Dr. Gorton's status as an employee of Greenwood Leflore Hospital, a government entity covered by the MTCA. We observe that Rance had a legal duty to conduct a due-diligence inquiry into the true employment status of potential defendants. ***Ray v. Keith***, 859 So. 2d 995, 999 (Miss. 2003).

**III. Whether Rance provided proper notice to Greenwood Leflore Hospital under the MTCA.**

9

¶19. Having determined no genuine issue of material fact exists as to the applicability of the MTCA, we turn to Dr. Gorton's argument that Rance failed to provide pre-suit notice to Greenwood Leflore Hospital's chief operating officer pursuant to the MTCA. *See* Miss. Code Ann. § 11-46-11(3) (Rev. 2002).

¶20. Mississippi Code Section 11-46-11 states the notice requirements for filing a lawsuit under the MTCA. According to Section 11-46-11(1):

> After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that *ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.* Service of notice of claim may also be had in the following manner: If the governmental entity is a county, then upon the chancery clerk of the county sued; if the governmental entity is a municipality, then upon the city clerk. If the governmental entity to be sued is a state entity as defined in Section 11-46-1(j), service of notice of claim shall be had only upon that entity's chief executive officer. If the governmental entity is participating in a plan administered by the board pursuant to Section 11-46-7(3), such chief executive officer shall notify the board of any claims filed within five (5) days after the receipt thereof.

Miss. Code Ann. § 11-46-11(1) (Rev. 2002) (emphasis added).

¶21. This Court strictly applies the ninety-day-notice requirement of Section 11-46-11(1). *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006). "[T]he ninety-day notice requirement under section 11-46-11(1) is a 'hard-edged, mandatory rule which the Court strictly enforces.'" *Id.* (quoting *Ivy v. GMAC*, 612 So. 2d 1108, 1116 (Miss. 1992)). *See also Price v. Clark*, 21 So. 3d 509, 518-19 (Miss. 2009) ("Strict compliance with statutory notice is required, regardless of why the plaintiff failed to provide notice.") (quoting *Easterling*, 928 So. 2d at 819-20); *Brown v. Sw. Miss. Reg'l Med. Ctr.,* 989 So. 2d 933, 936

(Miss. Ct. App. 2008) (stating that "*Easterling*'s strict compliance standard is meant to apply equally to cases in which no notice is filed, notice is filed after the complaint, or the complaint is filed sooner than ninety days after filing notice").

¶22. Rance provided pre-suit notice to HCMH. When Rance filed the suit, she separately served HMCH, Dr. Thomas, and Dr. Gorton. But because Dr. Gorton was employed by Greenwood Leflore Hospital, a covered entity, he was personally immune from suit, and could have been joined in a suit against his employer in a representative capacity only. Miss. Code Ann. § 11-46-7(2) (Rev. 2002). Because Rance did not serve notice on the chief executive officer of Greenwood Leflore Hospital ninety days prior to filing suit, Rance failed to follow the pre-suit notice requirements of the MTCA.

¶23. Rance attempts to circumvent this outcome by arguing that her notice to HCMH was constructive notice to Greenwood Leflore Hospital. Rance argues that Greenwood Leflore Hospital's employees worked at HCMH pursuant to a contractual relationship between the two hospitals. Rance contends that, given the hospitals' contractual relationship and the fact that she could not have known of Dr. Gorton's actual employment status, her notice to the chief executive officer of HCMH should have been adequate notice to Greenwood Leflore Hospital. The record shows no evidence of a contract between the two hospitals. Although Rance's contention that there was a contract between the hospitals is unsupported by the record, obviating the need for analysis of her argument, we find it appropriate to note that this Court strictly enforces the MTCA's ninety-day notice requirement.

## VI. Whether the statute of limitations has expired.

11

¶24. Dr. Gorton also avers that the statute of limitations had expired before Rance filed the complaint. The MTCA prescribes a one-year statute of limitation. Miss. Code Ann. § 11-46-11(3) (Rev. 2002). Specifically, the statute provides:

> All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days from the date the chief executive officer of the state agency receives the notice of claim, or for one hundred twenty (120) days from the date the chief executive officer or other statutorily designated official of a municipality, county or other political subdivision receives the notice of claim, during which time no action may be maintained by the claimant unless the claimant has received a notice of denial of claim. After the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice. However, should the governmental entity deny any such claim, then the additional ninety (90) days during which the claimant may file an action shall begin to run upon the claimant's receipt of notice of denial of claim from the governmental entity.

Miss. Code Ann. § 11-46-11(3).

¶25. According to the allegations of the complaint, the tortious, wrongful, or otherwise actionable conduct that caused Jordan's death occurred on August 7-8, 2007. Rance filed suit on November 5, 2008, more than one year later. Although the statute provides for tolling during the notice period, because Rance provided no notice to Dr. Gorton's employer, Greenwood Leflore Hospital, the tolling provision is inapplicable in this case. Therefore, Rance's claim was barred by the applicable statute of limitations under the MTCA.

> **V.** **Whether there was constructive notice and whether the borrowed-servant doctrine applies**.

12

¶26. Rance argues that Dr. Gorton was the borrowed servant of HCMH, and thus her notice to HCMH was sufficient. The borrowed-servant doctrine is a common-law rule "that a servant, in general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower, although he remains in the general employment of the lender." *Jones v. James Reeves Contractors, Inc.*, 701 So. 2d 774, 778 (Miss. 1997) (quoting *Quick Change Oil and Lube v. Rogers*, 663 So. 2d 585, 589 (Miss. 1995)). Where the rule applies, "[t]he borrower then becomes the employer to the exclusion of the lender." *Id.* This Court has identified three criteria for determining whether one is a borrowed servant: "(1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) has the workman voluntarily accepted the special employment." *Id.* at 778-79.

¶27. Rance argues that Dr. Gorton was the borrowed servant of HCMH because, at the time of the alleged negligence, he was working at HCMH pursuant to his employment contract with Greenwood Leflore Hospital, which provided that Dr. Gorton would be on the active medical staff of HCMH. Dr. Gorton argues that the borrowed-servant doctrine has not been recognized as an applicable theory under the MTCA, and that, even if the borrowed-servant doctrine were applicable to an MTCA claim, its elements were not met in this case.

¶28. This Court never has considered the borrowed-servant doctrine in the context of an MTCA claim. Assuming for the sake of argument that the borrowed-servant doctrine could be applied to an MTCA claim, it is plainly inapplicable to the facts presented by this case. The only evidence of the relationship between Dr. Gorton and HCMH was Dr. Gorton's

13

employment contract with Greenwood Leflore Hospital, requiring him to be on the active medical staff of HCMH. No evidence of any contract between Dr. Gorton and HCMH or between HCMH and Greenwood Leflore Hospital affecting Dr. Gorton's employment is in the record. "Generally, staff privileges permit a doctor to use hospital facilities to practice his medical profession." *State By and Through Miss. Ethics Comm'n v. Aseme*, 583 So. 2d 955, 958 (Miss. 1991) (quoting *Engelstad v. Virginia Mun. Hosp.*, 718 F.2d 262, 267 (8th Cir. 1983)). This Court has held that a physician's appointment to the medical staff of a hospital and the grant of clinical privileges do not equate to an employment contract between the physician and the hospital. *Sullivan v. Baptist-Mem'l Hosp.-Golden Triangle, Inc.*, 722 So. 2d 675 (Miss. 1998) (citing *Aseme*, 583 So. 2d at 958-60; *Trapp v. Cayson*, 471 So. 2d 375, 384 (Miss. 1985)). Notwithstanding the question of whether the borrowed-servant doctrine could apply to an MTCA claim, it is clear that Dr. Gorton's position on the medical staff of HCMH did not implicate the borrowed-servant doctrine. Therefore, summary judgment was warranted as to Dr. Gorton.

## CONCLUSION

¶29.    We find that there was no genuine issue of material fact that Dr. Gorton was employed by Greenwood Leflore Hospital, a political subdivision of the State of Mississippi covered by the MTCA. Rance did not comply with the pre-suit-notice requirements of the MTCA, and her claim against Dr. Gorton was barred by MTCA's one-year statute of limitations. The borrowed-servant doctrine is inapplicable to Rance's claim against Dr. Gorton. Therefore, we reverse the denial of summary judgment by the Circuit Court of Humphreys County, and we render judgment in favor of Dr. Gorton.

14

¶30.   **REVERSED AND RENDERED**.

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR.  KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶31.   The majority has concluded that the borrowed servant doctrine is inapplicable to the facts of this case.  I respectfully disagree and dissent.

¶32.   In ***Denton v. Yazoo & Mississippi Valley Railroad Company***, 284 U.S. 305, 308, 52 S. Ct. 141, 76 L. Ed. 310 (1932), the Supreme Court of the United States said that whether a principal may be held  liable for the acts of its servants

> depends not upon the fact that he was their servant generally, but upon whether the work which he was doing at the time was their work or that of another; a question determined, usually at least, by ascertaining under whose authority and command the work was being done.  When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former.

*Id.* at 308.  Further, in ***Quick Change Oil and Lube, Inc. v. Rogers***, 663 So. 2d 585 (Miss. 1995), this Court held that:

> The general rule, as applied at common law, is that a servant, in general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant to the borrower, although he remains in the general employment of the lender.  The borrower then becomes the employer to the exclusion of the lender.  *Application of the rule depends upon the question of whose work is being performed, and if the lender is to escape liability, it must appear that the servant is under the borrower's exclusive control and direction as to the work in progress.*  When an employee voluntarily accepts and enters upon such an assignment, he ceases to be in the course of the employment by the lender or the general employer.  However, while the "loaned servant" doctrine is generally considered applicable in the compensation field, a shift of emphasis will be noted as to the three pertinent questions involved, viz: *(1) whose work is being*

15

*performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) has the workman voluntarily accepted the special employment.*

*Id.* at 589 (emphasis in original) (citing Dunn, *Mississippi Workers' Compensation Law* § 186 (1986)).

¶33. This Court has never decided specifically whether the borrowed servant doctrine applies to cases brought under the Mississippi Tort Claims Act; however, the United States District Court for the Southern District of Mississippi has considered the application of the doctrine to the Federal Tort Claims Act. *See Banks v. United States*, 623 F. Supp. 2d 751 (S.D. Miss. 2009).

¶34. In *Banks*, Yolanda Banks, a patient of the University of Mississippi Medical Center High Risk Obstetrics Clinic, died of a post-operative intra-abdominal abscess as a result of Dr. Andrew T. Allen's alleged negligence. *Id.* at 752. At the time of treatment, Dr. Allen was a Captain in the United States Air Force, thus an employee of the United States.[3] *Id.* The plaintiff brought her medical malpractice action against the United States under the Federal Tort Claims Act. *Id.* The Government moved for summary judgment, "contending that it [could] not be held vicariously liable for Dr. Allen's alleged negligence since at the time of his actions in diagnosing and treating Ms. Banks, Dr. Allen was the borrowed servant of UMMC." *Id.* Applying Mississippi law, the federal district judge found Dr. Allen to have

---

[3] At the time of the events in *Banks*, Dr. Allen was a Captain in the Air Force in his second year of a residency training program of the Air Force and UMMC, and was assigned to a two-month rotation in the UMMC High Risk Obstetrics Clinic. *Banks*, 623 F. Supp. 2d at 753. Further, the "parameters of the training program were set forth by a 2003 Memorandum of Understanding (MOU) entered between UMMC and the Keesler Medical Center, Keesler Air Force Base." *Id.*

been the borrowed servant of UMMC and granted summary judgment in favor of the United States. *Id.* at 753, 756.

¶35. Though not controlling here, the federal court's analysis in *Banks* is on point and persuasive. That court acknowledged that "Mississippi law recognizes the defense of the 'borrowed servant' where a person who is under the employment of one employer may be temporarily loaned to another employer, in which circumstance 'the borrower . . . becomes the employer to the exclusion of the lender.'" *Id.* at 752-53 (quoting *Quick Change*, 663 So. 2d at 592). The *Banks* court held that "[t]he record evidence in this case establishes beyond reasonable challenge that Dr. Allen was UMMC's borrowed servant in connection with his residency at UMMC, and his diagnosis and treatment of Yolanda Banks during that residency." *Banks*, 623 F. Supp. 2d at 753. In that case, the record included the Memorandum of Understanding between UMMC and Keesler Medical Center delineating the duties of Dr. Allen and the obligations of UMMC. *Id.* at 754. Specifically, the agreement provided that Dr. Allen was expected, among other things, to provide patient care in accordance with "all hospital, state, and federal rules and regulations regarding patient care and . . . seek advice in questionable circumstances.'" *Id.* Additionally, the agreement mandated that UMMC would "make available the clinical and related facilities needed for training . . . ." *Id.*

¶36. In this case, the physician employment agreement between Dr. Gorton and Greenwood Leflore Hospital provided in relevant part, that "throughout the term of employment pursuant to this Agreement, [Dr. Gorton] shall maintain privileges and membership on the active medical staff of the Humphreys County Memorial Hospital and

17

the courtesy medical staff of the Greenwood Leflore Hospital . . . ." Additionally, the agreement required that Dr. Gorton "shall be responsible for providing appropriate care and treatment for patients at Gorton Clinic, Humphreys County Memorial Hospital, and the nursing home on an as-needed basis and when requested by [Greenwood Leflore] Hospital . . . ." Further, Schedule A of the agreement required Dr. Gorton to be responsible for the "oversight and care of clinic and Humphreys County Memorial Hospital patients in accordance with Hospital/medical staff policies and accepted professional standards." Established law and the facts before us lead logically to the conclusion that Dr. Gorton was the borrowed servant of Humphreys County Memorial Hospital (HCMH) at all relevant times. *Banks*, 623 F. Supp. 2d at 753.

¶37.     Moreover, under controlling Mississippi case law, Dr. Gorton was the borrowed servant of HCMH in accordance with the *Quick Change* three-part test. *See Quick Change*, 663 So. 2d at 589.   At the time of the Jordan child's death, Dr. Gorton was required, pursuant to his employment agreement with GLH, to do the work of HCMH.  It can be deduced from the language of Dr. Gorton's employment agreement that HCMH had the right to control Dr. Gorton's work performed at HCMH.  Specifically, Dr. Gorton was required to provide care at HCMH "in accordance with Hospital/medical staff policies and accepted professional standards." Such is a reasonable inference that can be drawn from the evidence. Finally, there is no indication in the record that Dr. Gorton did not voluntarily enter into the employment agreement with GLH that required him to be an active member of the HCMH medical staff.  Because Dr. Gorton was the borrowed servant of HCMH, Rance gave proper

18

pre-suit notice of her claim against Dr. Gorton pursuant to Mississippi Code Section 11-46-11(1). See Miss. Code Ann.§ 11-46-11(1) (Rev. 2002).

¶38. Recently, in *Tillis v. State*, 43 So. 3d 1127 (Miss. 2010), this Court held that a nurse, employed by a contractor that provided medical services to a private correctional facility, was the dual employee of the contractor and the private correctional facility. In that case, Zenas Tillis was indicted for the simple assault of Kathy Hogue, a nurse who worked at Walnut Grove Youth Correctional Facility in accordance with a contract between Health Assurance and Walnut Grove, in violation of Mississippi Code Section 47-4-1(4).[4] *Tillis*, 43 So. 3d at 1128. Counsel for Tillis argued that the State's case failed because Hogue was not an employee of Walnut Grove; rather, defense counsel asserted, Hogue was a contract employee of Health Assurance. *Id.* at 1130. The State responded that "while Walnut Grove might not write her paycheck, that is the only place she works . . . . She's there every day . . . . Hogue was a de facto employee of Walnut Grove." *Id.*

¶39. With regard to whether Hogue was an employee of Walnut Grove, the circuit court held that "as far as the interpretation . . . that ostensibly it could be broadly interpreted that

_____

[4] Mississippi Code Section 47-4-1(4) provides, in relevant part:

A person convicted of simple assault of an employee of a private correctional facility while such employee is acting within the scope of his or her duty or employment shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) or by imprisonment for not more than five (5) years, or both.

Miss. Code Ann. § 47-4-1(4) (Rev. 2004).

Hogue, in this setting, and under these circumstances, would qualify as being a person who would fit the term of employee." *Id.* On appeal, this Court agreed and held that

> [d]ual employment arises "when an employee is engaged in the service of two (2) employers in relation to the same act." *Ray v. Babcock & Wilcox Co., Inc.*, 388 So. 2d 166, 167 (Miss. 1980). *See also Northern Elec. Co. v. Phillips*, 660 So. 2d 1278, 1282 (Miss. 1995) ("[i]n Mississippi, one may be employed by more than one employer . . . ."); *Dependents of Roberts v. Holiday Parks, Inc.*, 260 So. 2d 476, 478 (Miss. 1972) ("[i]t is well settled that a person may be a servant of two or more masters at one time as to one act."). Such dual employment may exist even if only one employer pays the employee. *See Biggart v. Texas Eastern Transmission Corp.*, 235 So. 2d 443, 444-45 (Miss. 1970) ("[t]he fact that only one of the employers paid Biggart (here River Construction Corporation) does not alter the fact that Biggart was in the service of Texas Eastern and Brown & Root, Inc., an employer-employee relationship between appellees and . . . Biggart based on the element of control present at the time."). Accordingly, the fact that Hogue's paycheck came from Health Assurance is not dispositive. Rather, given Hogue's exclusive service to Walnut Grove, this Court concludes that she was a dual employee of both Walnut Grove and Health Assurance.

*Tillis*, 43 So. 3d at 1132. Moreover, this Court opined in a footnote that "the borrowed servant doctrine [was also] applicable here, because Hogue was working exclusively at Walnut Grove, supplying medical services which Walnut Grove was constitutionally required to provide its inmates." *Id.*

¶40. In this case, Dr. Gorton was clearly the borrowed servant of HCMH and the dual employee of both GLH and HCMH. Dr. Gorton's employment contract was with GLH; however, the employment contract provided, in relevant part, that Dr. Gorton "shall maintain privileges and membership on the active medical staff of the Humphreys County Memorial Hospital and the courtesy medical staff of the Greenwood Leflore Hospital . . . ." Further, Dr. Gorton was "responsible for providing appropriate care and treatment for patients at

20

Gorton Clinic, Humphreys County Memorial Hospital, and the nursing home on an as-needed basis and when requested by [Greenwood Leflore] Hospital . . . ."

¶41.    The record is clear that Dr. Gorton was an employee engaged in the service of two employers in relation to the same act: the care and treatment of patients at Humphreys County Memorial Hospital. *See* ***Ray v. Babcock & Wilcox Co., Inc.***, 388 So. 2d 166, 167 (Miss. 1980).  Moreover, there was no reason for Rance to have had knowledge that Gorton was the employee of any hospital other than HCMH.  Rance's child was admitted to Dr. Gorton's service at HCMH, and the medical records reveal that at least one nurse and one other physician at HCMH discussed the child's care with Dr. Gorton, via telephone.

¶42.    Accordingly, I must respectfully disagree with the majority's conclusion that Dr. Gorton was not the borrowed servant of Humphreys County Memorial Hospital.  I would affirm the trial court's denial of Dr. Gorton's motion for summary judgment.

        **GRAVES, P.J., JOINS THIS OPINION.**