FAIR, J.,
for the Court:
¶ 1. Kenneth Roberts was injured working on a ship at the Ingalls shipyard, which was at that time owned and operated by Northtrop Grumman Ship Systems (“NGSS”). Roberts sued NGSS, alleging various acts of negligence. The trial court granted summary judgment to NGSS after finding as a matter of law that Roberts was a “borrowed employee” whose exclusive remedy was workers’ compensation. We agree with the trial court, so we affirm.
FACTS
¶ 2. Roberts earned a living as an itinerant electrician. He applied for a job with Ameri-Force Craft Services, a labor broker, after seeing an advertisement in a trade magazine. Roberts testified in his deposition that when he applied with Am-eri-Force he knew he would be working at Ingalls.
¶ 3. In early October 2006, Roberts traveled to the Ameri-Force offices in Pasca-goula. He executed various employment papers and took a drug test there. Roberts then went to NGSS for orientation, where he was given safety instruction, a competency test, and an NGSS safety manual. NGSS told Roberts where to report for work, and all of his supervisors were NGSS employees. Roberts was assigned to work on LHD-8, an amphibious assault vessel that was under construction by NGSS for the United States Navy. On his third day of work, Roberts was injured when he fell from a ladder and cut his leg on some duct work. He was unable to return to work and received benefits under the Longshore and Harbor Workers’ Compensation Act through his employment with Ameri-Force. Roberts later brought this negligence suit against NGSS.
STANDARD OF REVIEW
¶ 4. We review the grant of a summary judgment de novo. Davis v. Hoss, 869 *473 So.2d 397, 401 (¶ 10) (Miss.2004). Summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). “[Ejvidence is viewed in the light most favorable to the party opposing the motion.” Davis, 869 So.2d at 401 (¶ 10).
DISCUSSION
¶ 5. The Longshore and Harbor Workers’ Compensation Act (LHWCA) is a federal law that creates a workers’ compensation scheme for certain maritime workers who do not qualify as seamen. Like other workers’ compensation schemes, the LHWCA provides wage replacement and medical benefits to workers injured in the course of employment, regardless of whether anyone is at fault for their injury. But in exchange for guaranteed coverage, a worker must surrender his right to sue the employer for negligence. See 33 U.S.C. § 905(a). The worker may still sue third parties, however, leading to the issue in today’s case: whether Roberts was a “borrowed employee” of NGSS and thus barred by the exclusivity provision of the LHWCA from bringing this negligence suit.
¶ 6. The first question is the choice of law — whether we should apply Mississippi or federal law in determining if Roberts was a borrowed employee. Both parties agree that we should employ the federal test, and given that Roberts accepted LHWCA benefits through his nominal employer, that appears to be the correct course. See Colbert v. Miss. Marine Corp., 755 So.2d 1116, 1120 n. 3 (¶ 12) (Miss.Ct.App.1999).
¶ 7. The seminal case governing this issue in the federal arena is Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969). There, the Fifth Circuit held that a plaintiff would be limited to LHWCA benefits as an exclusive remedy against a defendant who was found, as a matter of law, to be his borrowing employer. The Fifth Circuit employs the following factors to determine whether a plaintiff was a borrowed employee:
(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
(2) Whose work is being performed?
(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
(4) Did the employee acquiesce in the new work situation?
(5) Did the original employer terminate his relationship with the employee?
(6) Who furnished tools and place for performance?
(7) Was the new employment over a considerable length of time?
(8) Who had the right to discharge the employee?
(9) Who had the obligation to pay the employee?
Gaudet v. Exxon Corp., 562 F.2d 351, 355 (5th Cir.1977) (citing Ruiz, 413 F.2d at 312-13). “[T]he issue of whether a relationship of borrowed servant existed is a matter of law.” Id. at 357 (quoting Ruiz, 413 F.2d at 312-13). Summary judgment should be granted unless there is a showing that “genuine disputes exist over enough determinative factual ingredients to make a difference in th[e] result.” Id. at 358.
¶ 8. From the record and briefs, it is apparent there are no major factual disputes. Instead, the parties’ disagree *474 ment is over the interpretation of the facts and the application of the Ruiz factors. We recognize that our review is de novo, but after our own independent review of the record and controlling law, we adopt the findings of the trial judge on the Ruiz factors. Judge Harkey ruled as follows (footnotes and some citations omitted):
(1) Both parties agree that the NGSS had supervisors on the job site who determined the type and manner of the work to be performed by Roberts. Although he claims he managed the details of his own work, Roberts admitted any instructions he received came from an NGSS employee, a “lead man” named Virgil, and he worked alongside other NGSS employees. Other than instructing Roberts to report to a certain gate at the shipyard, Ameri-Force had no other supervisory personnel on-site and he received no supervision or direction from anyone other than NGSS personnel. His first task upon reporting for work was to undergo safety orientation provided all NGSS employees and receive the NGSS safety manual. This factor supports borrowed employee status.
(2) The parties acknowledge that the work being performed was that of NGSS.
(3) The contract between Ameri-Force and NGSS contained a provision regarding the status of loaned employees. Provision 6.6.2 of the contract provided, in part, as follows:

Independent Contractor Status

At all times ..., the parties agree that [Ameri-Force] is and shall remain an independent contractor and that [Ameri-Force] including, (sic) its administrative employees and/or Contract Labor assigned to Northrop Grumman, is not an employee, agent, joint venture or partner of Northrop Grumman. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Northrop Grumman and [Ameri-Force] including its Contract Labor....
Provisions of this nature have been found to create a fact issue sufficient to deny summary judgment when other factors do not overwhelmingly support borrowed employee status. West v. Kerr-McGee Corp., 765 F.2d 526, 531 (5th Cir.1985); Alday v. Patterson Truck Line, Inc., 750 F.2d 375, 378 (5th Cir.1985). On the other hand, where other factors clearly support the existence of a borrowed employee relationship, summary judgment would be proper as the question is universally considered a matter of law. Brown v. Union Oil Co. of [Cal.], 984 F.2d 674, 678[] n. 5 (5th Cir.1993). This is so because “the reality of the workplace and the parties’ actions in carrying out a contract ... can impliedly modify, alter or waive express contract provisions.” [Melancon v. Amoco Prod. Co., 834 F.2d 1238, 1245 (5th Cir.1988)]. The parties “cannot automatically prevent a legal status like borrowed employee from arising merely by saying in a provision in their contract that it cannot arise.” Id.
It is clear that from the interpretation Ameri-Force had of its agreement, it placed Roberts under the exclusive control and direction of NGSS. Unlike West and Alday, there are no facts that would dispute this conclusion. Roberts’[s] characterization that since he was certified as an electrician he directed his own work rings hollow in this context. He was aware of NGSS[’s] request for electricians when he applied to Ameri-Force, was hired by Ameri-Force specif *475 ically for assignment to NGSS, and was doing work of NGSS when injured. He apparently had no further contact with Ameri-Force after he began work for NGSS. A further review of the other factors is necessary.
In Gaudet, the Fifth Circuit emphasized the importance of factors four through seven in distinguishing the borrowed servant doctrine in the LHWCA context from respondeat superior in general. “The principal focus within the Ruiz test in this case should therefore be: 1) was the second employer itself responsible for the working conditions experienced by the employee, and the risks inherent therein, and 2) was the employment with the new employer of such duration that the employee could be reasonably presumed to have evaluated the risks of the work situation and acquiesced thereto.” [Gaudet ], 562 F.2d at 357.
(4) From the preceding it is clear that Roberts acquiesced in this work situation, and this issue is conceded.
(5) This factor—was the original employment terminated?—does not require a complete severance of the relationship but is focused upon “the lending employer’s relationship with the employee [while] the borrowing occurs.” [Capps v. N.L. Baroid-NL Indus., Inc., 784 F.2d 615, 617-18 (5th Cir.1986) ]. Ameri-Force hired Roberts, told him to report to NGSS, placed no restrictions upon any of his work activities while at NGSS and had little or no dealings with him until after the injury. Although arranging medical treatment after his injury and providing compensation via LHWCA, as required by its contract, Ameri-Force exerted no control over the work activities of Roberts after the assignment, nor did it intend to. The relationship was nominal at best and favors borrowed employee status. [Melancon ], 834 F.2d at 1246.
(6) Neither Ameri-Force nor NGSS provided electrician’s tools for Roberts. Roberts supplied his personal tools which is commonplace for an itinerant electrician. The workplace, eonsuma-bles[,] and other supplies were provided by NGSS. This factor weighs slightly in NGSS[’s] favor, and at most would be neutral.
(7) A considerable length of time working for a borrowing employer is a significant factor evidencing a borrowed employee status, whereas the converse is not necessarily true. Such status is not negated where an injury occurs early in the working relationship. [Capps ], 784 F.2d at 618; [Brown ], 984 F.2d at 679. The evidence shows that Roberts spent his first day at orientation, the next two workdays cleaning an area in preparation, and was injured his third day while performing electrical work aboard ship. This factor is neutral.
(8) [Roberts] concedes that NGSS had the right to terminate [him] from its work site, and this power has been held to be sufficient to support a borrowed employee status. [Capps], 784 F.2d at 618; [Brown], 984 F.2d at 679.
(9) Finally, Ameri-Force had the contractual obligation to pay Roberts. However, Ameri-Force was compensated under its contract with NGSS based upon hours worked by Roberts at rates established by the contract, plus certain out-of-pocket, [“] Reimbursable Expenses.” Provisions such as this have been acknowledged as supporting borrowed employee status, as it essentially results in payment from the borrowing employer. [Brown], 984 F.2d at 679; [Melancon ], 834 F.2d at 1246; [Capps], 784 F.2d at 618.
Considering the evidence before the Court, the Ruiz factors weigh sufficient *476 ly in favor of borrowed servant status for the Court to conclude as a matter of law that [Roberts] was a borrowed servant of NGSS.
¶ 9. The issues raised by Roberts were properly resolved in the trial judge’s thorough and thoughtful decision; Roberts has made no new arguments on appeal. As the trial judge got it right, it would serve no useful purpose for this Court to repeat the discussion in affirming the trial court’s judgment.
¶10. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY. JAMES, J., NOT PARTICIPATING.