ROBERTS, J.,
for the Court:
¶ 1. This appeal stems from the Bolivar County Circuit Court’s grant of summary judgment in favor of Kelly Services Inc. (Kelly Services) and Brad Montgomery. Mark and Kay Baldwin executed their appeal on May 21, 2012. Finding no error, we affirm the circuit court’s decision granting Kelly Services and Montgomery’s motion for summary judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. Kelly Services is a nationwide employment agency and recruitment company that provides businesses with temporary workers or staff to meet a variety of needs. In this case, Montgomery, an employee of Kelly Services, was working at the Faurecia Automotive Seating Inc. (Faurecia) plant on October 17, 2007, pursuant to a contract between Kelly Services and Faurecia. Per Faurecia’s direction, Montgomery was operating a forklift, unloading and stacking the product. One load Montgomery had stacked became unstable and fell. It is unclear from the record as to whether the load fell directly on Mark Baldwin (Baldwin), a Faurecia employee, or whether the load hit other objects that then injured Baldwin. It is also unclear from the record what injuries Baldwin sustained.
¶ 3. Baldwin collected workers’ compensation benefits through his employer, Faurecia. He and his wife, Kay, then filed a complaint against Kelly Services and Montgomery on August 24, 2009. Baldwin claimed that Montgomery was negligent; therefore, Kelly Services was also liable under the doctrine of respondeat superior. Kay sued for loss of consortium due to Baldwin’s injuries. On October 20, 2010, Kelly Services and Montgomery filed a motion for summary judgment alleging that Baldwin’s exclusive remedy for the work-related injury was workers’ compensation. The circuit court granted summary judgment in favor of Montgomery and Kelly Services on May 3, 2012. In its order, the circuit court found that Montgomery was a borrowed servant at the time of the incident, leaving Baldwin the sole remedy of workers’ compensation. Kay’s loss-of-consortium claim was also denied due to the denial of Baldwin’s claims.
¶ 4. The Baldwins’ sole issue on appeal is whether the “circuit court erred in finding that there were no genuine issues of material fact as to whether or not [Montgomery] was a borrowed servant or dual employee of [Faurecia] at the time of the incident.
*277 ANALYSIS
¶ 5. On appeal, a circuit court’s grant or denial of a motion for summary judgment is reviewed using the de novo standard. Liberty Mut. Ins. Co. v. Shoemake, 111 So.3d 1207, 1209 (¶ 7) (Miss.2013) (citing Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1205 (¶5) (Miss.1998)). Summary judgment properly may be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” M.R.C.P. 56(c).
¶ 6. The Baldwins argue that there was a genuine issue of material fact as to whether Montgomery was a borrowed servant or a dual employee of Faurecia at the time of the incident. According to the Baldwins, no contract existed between Montgomery and Faurecia, and Faurecia merely instructed Montgomery on the work to be completed and did not exert control over Montgomery. Although the Baldwins recognize that Faurecia had the ability to inform Kelly Services that Montgomery was no longer needed or wanted at the plant, they submit that Kelly Services had sole control over hiring and firing Montgomery. Additionally, the Baldwins contend that Faurecia was not responsible for any of the disciplinary actions of Kelly Services’ employees, and it did not handle these employees’ pay roll. Ultimately, the Baldwins submit that the circuit court erred in finding that there was a genuine issue of material fact as to Montgomery’s employment status at the Faurecia plant, making the grant of summary judgment improper.
¶ 7. “The borrowed-servant doctrine is a common-law rule ‘that a servant, in general employment of one person, who is temporarily loaned to another person to do the latter’s work, becomes, for the time being, the servant of the borrower, although he remains in the general employment of the lender.’ ” Gorton v. Rance, 52 So.3d 351, 359 (¶26) (Miss.2011) (quoting Jones v. James Reeves Contractors, Inc., 701 So.2d 774, 778 (Miss.1997)). The Mississippi Supreme Court “has identified three criteria for determining whether one is a borrowed servant: ‘(1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) has the workman voluntarily accepted the special employment.’ ” Id. (internal citation omitted). After reviewing the record before us and applying the above criteria, we find that Montgomery was a borrowed servant; therefore, Baldwin’s exclusive remedy was through workers’ compensation benefits, which he did receive from his employer, Faurecia.
¶ 8. In regard to the first factor, Montgomery was certainly performing the work of Faurecia at the time of the incident. He was driving a Faurecia-owned forklift in a Faurecia facility, moving product a Faurecia supervisor had instructed him to move. The second factor, who has the control or the right to control the employee as to the work being performed, also supports the finding that Montgomery was a borrowed servant. According to Montgomery’s deposition, at the time of the incident, he had been working for Faurecia approximately forty hours a week for a year. He also explained that Faurecia employees trained him on how to operate a forklift, and instructed him on his duties on a daily basis. He further described that he understood the work he was performing to be for Faurecia and not Kelly Services. Judy Weatherspoon, Kelly Services’ on-site supervisor at the Faurecia plant, also provided a deposition, at which she described her duties as handling pay *278 roll, disciplinary actions involving violations of Kelly Services’ disciplinary rules, and “placing [Kelly Services’] employees where needed[.]” Weatherspoon stated that Kelly Services hired the employees and then would supply Faurecia with employees based on what type of employee was needed. She also stated that both Faurecia and Kelly Services could fire employees, but that Faurecia would just inform her that a certain employee was no longer wanted or needed to work. She also testified that Faurecia instructed Kelly Services’ employees on what jobs needed to be done, how to do the job, and what type of job to do, as well as supervised the execution of the job. According to Weath-erspoon, her daily duty was to make sure there were enough employees at the plant. Montgomery testified that Weatherspoon never came back to the work area and never instructed him on how to do the job. Lastly, Montgomery also clearly voluntarily accepted the special employment at Faurecia. As described above, he stated at his deposition that he was doing the work of Faurecia and not of Kelly Services. He knew that he was not performing the work of Kelly Services at a Kelly Services facility. All factors support a finding that Montgomery was a borrowed servant.
¶ 9. The supreme court has held “[s]um-mary judgment is appropriate where a temporary employment agency assigns an employee to another employer and the employee performs the normal work of the second employer and is controlled and supervised by that employer.” N. Elec. Co. v. Phillips, 660 So.2d 1278, 1282 (Miss.1995). The facts of the present case fit squarely within the supreme court’s holding in Phillips. Kelly Services, a temporary-employment agency, assigned Montgomery to work at Faurecia. Montgomery was under the control and supervision of Faurecia in his day-to-day activities at the plant. Our reading of the record indicates that the Kelly Services supervisor was at the plant to ensure there were sufficient employees and to send off its employees’ time cards at the end of the week, but the supervisor did not provide any further instruction to the employees. Thus, based on our analysis of the record, we find that the circuit court properly granted Montgomery and Kelly Services’ motion for summary judgment. We affirm.
¶10. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR. MAXWELL, J„ NOT PARTICIPATING.