# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01791-COA

| | |
|---|---|
| MICHAEL JAMES AND ASSOCIATED GENERAL CONTRACTORS OF MISSISSIPPI, INC. | APPELLANTS |

v.

| | |
|---|---|
| BRIAN DEDEAUX AND CONSTRUCTOR SERVICES, INC. | APPELLEES |

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/2015 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | MATTHEW JASON SUMRALL ZACHARY MORI BONNER BRIAN CHRISTOPHER WHITMAN W. THOMAS MCCRANEY III |
| ATTORNEYS FOR APPELLEES: | MYLES ETHAN SHARP ROBERT ELLIOTT BRIGGS III |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT TO APPELLEES |
| DISPOSITION: | AFFIRMED: 02/21/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., FAIR AND WILSON, JJ.

### FAIR, J., FOR THE COURT:

¶1.    Michael James and Brian Dedeaux were working on a construction project at Keesler Air Force Base when the scissor lift Dedeaux was operating struck James, severely injuring him.  At the time, James was an employee of Aladdin Construction Co., while Dedeaux was employed by Constructor Services Inc. ("CSI").  CSI had a contract with Aladdin to provide

labor for the Keesler project.

¶2. James filed a negligence suit against Dedeaux and CSI in the Harrison County Circuit Court. On the defendants' motion for summary judgment, the circuit court found Dedeaux had been "loaned" to Aladdin by CSI, limiting James to workers' compensation benefits under the exclusivity provision of the Mississippi Workers' Compensation Law. James appeals that decision.

## STANDARD OF REVIEW

¶3. We review the grant of a summary judgment de novo. *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "[E]vidence is viewed in the light most favorable to the party opposing the motion." *Davis*, 869 So. 2d at 401 (¶10).

## DISCUSSION

¶4. On appeal, James contends that the trial court erred in finding, as a matter of law, that Dedeaux was a borrowed servant of Aladdin—and thus that James was barred from suing in tort. James enumerates two separate issues, but both go to the propriety of summary judgment and are based on the same factual contentions, so we address them together.

¶5. "The borrowed-servant doctrine is a common-law rule that a servant, in general employment of one person, who is temporarily loaned to another person to do the latter's

2

work, becomes, for the time being, the servant of the borrower, although he remains in the general employment of the lender." *Gorton v. Rance*, 52 So. 3d 351, 359 (¶26) (Miss. 2011) (citation omitted). The Mississippi Supreme Court "has identified three criteria for determining whether one is a borrowed servant: (1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) [whether] the workman voluntarily accepted the special employment." *Id.* (citation omitted).

¶6. Here, there is no question that the work being done was Aladdin's. The dispute, or alleged dispute, centers around the last two factors, who controlled the work and whether Dedeaux voluntarily accepted the special employment.

¶7. James points to the contract between CSI and Aladdin, which provided explicitly that CSI employees were not joint employees of Aladdin and that CSI would supervise them and control various aspects of their work. However, the evidence as to the actual conditions under which Dedeaux worked was quite different: he testified that CSI was a temporary employment agency and that he knew from the beginning that he would be assigned to an Aladdin job. On arrival, Dedeaux was evaluated by Aladdin's supervisors, worked in an Aladdin crew and received work assignments from the Aladdin supervisors. He did the same work as the Aladdin employee crew members, was partnered with an Aladdin employee, and used either his own personal tools or tools provided by Aladdin. At the time of the accident he had been working with the Aladdin crew for more than two months and was paired with James (an Aladdin employee). The two were framing a steel stud wall, taking turns framing

3

either the top or the bottom part of the wall. Dedeaux used Aladdin's nail guns, Aladdin's chop saws, and Aladdin's scissor lift, and was under Aladdin's direct supervision. Dedeaux's account was not contradicted by anyone with knowledge of the job site; in fact, James himself largely corroborated it. So far as the record reveals, Dedeaux's situation at the job site was almost indistinguishable from that of the crew members who worked for Aladdin directly.

¶8.      In his arguments on appeal, James focuses on the account of Ernie Huffine, who was the director of construction for Aladdin and was deposed as Aladdin's corporate representative under Mississippi Rule of Civil Procedure 30(b)(6). Huffine initially appeared to testify to the goings on at the job site in a way favorable to James's positions – i.e., that CSI employees worked separately from Aladdin employees, that they worked their own hours and were supervised by CSI supervisors, and the like. However, Huffine eventually made it clear that his descriptions were not based on personal or corporate knowledge of facts on the ground; he was describing the job site and the relationship between CSI and Aladdin as they were *supposed to be* according to the contracts between CSI and Aladdin and between Aladdin and the government. As was observed in *Roberts v. Northrop Grumman Ship Systems*, 108 So. 3d 471, 474 (¶8) (Miss. Ct. App. 2013) (internal citations omitted), "the reality of the workplace and the parties' actions in carrying out a contract can impliedly modify, alter or waive express contract provisions." *See also N. Elec. Co. v. Phillips*, 660 So. 2d 1278, 1282 (Miss. 1995).

¶9. James also points to general language in several decisions that speak to "ultimate control" or "authoritative control" as distinguished from "mere suggestion as to details or the necessary cooperation [in] a larger undertaking." *See, e.g., Jones v. James Reeves Contractors Inc.*, 701 So. 2d 774, 777-79 (Miss. 1997) (noting that drawing the line on the question of control had "perplexed" courts for decades). From this, he argues that Dedeaux was never truly under the control of Aladdin, as CSI maintained the ultimate authority to terminate Dedeaux from its employment. But there is no need to resort to general statements of the law in this instance, as the Mississippi Supreme Court has held without reservation that temporary employment situations present a clear-cut case. In *Northern Electric Company*, 660 So. 2d at 1282, the supreme court held: "Summary judgment is appropriate where a temporary employment agency assigns an employee to another employer and the employee performs the normal work of the second employer and is controlled and supervised by that employer." *See also Baldwin v. Kelly Servs. Inc.*, 121 So. 3d 275, 278 (¶9) (Miss. Ct. App. 2013).

¶10. The evidence here shows that, notwithstanding contractual provisions to the contrary, CSI was a temporary employment agency and Dedeaux was working as a temporary employee of Aladdin at the time of James's injury. Dedeaux was performing the normal work of Aladdin employees, using Aladdin's tools, and was under Aladdin's control and supervision. Dedeaux voluntarily accepted the special employment. Consequently he was a loaned servant of Aladdin at the time he injured James, and James is limited to workers'

5

compensation benefits as his exclusive remedy. We affirm the circuit court's grant of summary judgment.

¶11. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, SECOND JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.**

**CARLTON, J., DISSENTING:**

¶12. I respectfully dissent from the majority's opinion. The trial court erred in granting summary judgment because the record reflects that questions of material fact exist in this case and that the trial court erroneously construed the facts and questions of disputed fact in the light most favorable to the Appellees, the movants for summary judgment.[1] Such facts include Huffine's testimony about the presence of a CSI supervisor at the Keesler site and Aladdin's authority to remove CSI employees from the site. As the record reflects, the trial court found it was unclear whether CSI had a field foreman on the Keesler site, and the court determined that Aladdin possessed the authority to remove CSI employees if Aladdin felt the quality of the work was at issue. However, these factual questions constituted material questions of fact that preclude summary judgment in this case.

¶13. In accordance with the contract between CSI and Aladdin, CSI maintained an onsite

---

[1] *See Karpinsky v. Amer. Nat'l Ins.*, 109 So. 3d 84, 88 (¶10) (Miss. 2013) (discussing the standard of review applied to summary-judgment motions).

supervisor for its CSI employees when CSI provided Aladdin with skilled labor for this project. The CSI supervisor coordinated any daily work with Aladdin's supervisors, and then the CSI supervisor directed the CSI employees on the job site. Additionally, CSI retained the right to hire and fire its own employees. The record reflects that, pursuant to its contract with Aladdin, CSI maintained control and supervision over its CSI employees, and the CSI supervisor directed the details of the duties given to the CSI employees performing work on the Aladdin project at Keesler.

¶14. The borrowed-servant doctrine is refuted by the evidence in the record of CSI's right to hire, fire, and control its own employees and by the evidence of CSI's onsite supervision of its own employees. Thus, the trial court, upon granting summary judgment in favor of Dedeaux and CSI, erred by failing to construe the facts in the light most favorable to the nonmovant.[2] In *Quick Change Oil & Lube Inc. v. Rogers*, 663 So. 2d 585, 589 (Miss. 1995), the Mississippi Supreme Court stated:

> The general rule, as applied at common law, is that a servant, in general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant to the borrower, although he remains in the general employment of the lender. The borrower then becomes the employer to the exclusion of the lender.

(Citation omitted).

---

[2] *See Karpinsky*, 109 So. 3d at 88 (¶9) ("We review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." (citation and internal quotation marks omitted)).

¶15.   "[I]t is reversible error for a trial court to substitute its summary judgment for a jury's consideration of disputed factual issues if material to the case." *Downs v. Choo*, 656 So. 2d 84, 86 (Miss. 1995) (citation omitted).[3]   Application of the borrowed-servant doctrine "depends upon the question of whose work is being performed, and if the lender is to escape liability, it must appear that the servant is under the borrower's exclusive control and direction as to the work in progress." *Jones v. James Reeves Contractors Inc.*, 701 So. 2d 774, 778 (Miss. 1997) (quoting *Quick Change Oil & Lube*, 663 So. 2d at 589).   Based on a review of relevant caselaw and the facts in the present case, I find that the trial court erred in granting summary judgment to Dedeaux and CSI.  As a result, I respectfully dissent from the majority's opinion.

**WESTBROOKS, J., JOINS THIS OPINION.**

---

[3] *See also Jones v. James Reeves Contractors Inc.*, 701 So. 2d 774, 778 (Miss. 1997) (discussing the borrowed-servant doctrine).