# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01038-COA

**RODGER DAWSON**                                                                  **APPELLANT**

**v.**

**LARRY BURGS AND PROFESSIONAL**                                     **APPELLEES**
**STAFFING COMPANY, INC.**

DATE OF JUDGMENT:                    08/19/2021
TRIAL JUDGE:                              HON. RICHARD A. SMITH
COURT FROM WHICH APPEALED:      SUNFLOWER COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:          CHARLES M. MERKEL JR.
                                              EDWARD P. CONNELL JR.
                                              ROBERT ALEXANDER CARSON III
ATTORNEYS FOR APPELLEES:          ROBERT P. THOMPSON
                                              CHARLES BARTON WYNN JR.
NATURE OF THE CASE:                  CIVIL - PERSONAL INJURY
DISPOSITION:                            AFFIRMED - 04/11/2023
MOTION FOR REHEARING FILED:

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     After being injured while working at a Dollar General warehouse, Rodger Dawson filed a complaint in the Sunflower County Circuit Court against Larry Burgs and Professional Staffing Company Inc. (Professional Staffing). The defendants moved for summary judgment, which the circuit court granted. Finding no error, we affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     Brambles Inc., a staffing agency, assigned Dawson to work for Dollar General at a warehouse in Indianola, Mississippi. Brambles Inc. agreed to and did provide workers'

compensation coverage to Dawson. Similarly, Professional Staffing, another staffing agency, had assigned Burgs to work for the same Dollar General warehouse. According to a temporary service agreement between Professional Staffing and Dollar General, Burgs was to remain an employee of Professional Staffing, and Professional Staffing agreed to and did provide workers' compensation coverage to Burgs. The agreement provided, in relevant part:

> Assigned employees are employees of [Professional Staffing] and shall not be considered or treated as employees of [Dollar General] by the parties. Nothing contained in this Agreement shall entitle Assigned Employees to any benefits or compensation from [Dollar General]. As a condition of their assignment, [Professional Staffing] must require Assigned Employees to acknowledge in writing that they are employees of [Professional Staffing], not [Dollar General], and are not entitled to participate in any of [Dollar General's] benefit plans. [Professional Staffing] shall bear sole responsibility for payment of compensation to its personnel. [Professional Staffing] shall be solely responsible to pay and report, for all personnel assigned to [Dollar General's] work, all federal, state and local income tax withholding, social security taxes, and unemployment insurance applicable to such personnel as employees of [Professional Staffing]. [Professional Staffing] shall bear sole responsibility for any health or disability insurance, retirement benefits, or other welfare or pension benefits, if any, to which such personnel may be entitled . . . . [Professional Staffing] shall procure and maintain workers' compensation coverage sufficient to meet the statutory requirements of every state in which the Assigned Employees are engaged in [Dollar General's] work and, if such personnel reside in another state, such insurance shall also meet the requirements of such other state.[1]

> . . . .

> At all times during the term of this Agreement, [Professional Staffing] shall be an independent contractor to [Dollar General], and employees assigned under this Agreement shall remain exclusively the employees of [Professional Staffing]. . . . [Professional Staffing] shall perform the services hereunder as

---

[1] The agreement also provided that "[Dollar General] shall be named as an . . . alternate employee endorsement on Workers' Compensation."

2

an independent contractor.

Additionally, as to training and supervision, the agreement provided, in relevant part:

> [Dollar General] will reasonably train, instruct, assist and supervise Assigned Employees in performing the agreed upon duties.

> [Dollar General] shall not . . . request or permit Assigned Employee to use any vehicle or forklift, regardless of ownership, in connection with the performance of services for [Dollar General] unless [Professional Staffing] has given prior written approval to [Dollar General].

The agreement was dated September 2018, and it provided that "[t]he initial term of [the] Agreement" would continue for a period of one year.[2]

¶3.     More than one year later, in December 2019, while working at the Dollar General warehouse, Burgs allegedly asked Dawson to assist him with a pallet jack that had become stuck. Burgs allegedly turned the throttle on the pallet jack, the pallet jack began to spin, and then the pallet jack pinned Dawson's leg against a rack of merchandise, causing injuries to Dawson. Dawson was compensated by Brambles Inc.'s workers' compensation carrier—Liberty Mutual Fire Insurance Company (Liberty Mutual).

¶4.     In November 2020, Dawson filed a complaint against Burgs and Professional Staffing. Dawson alleged that Burgs had been negligent and that Professional Staffing was liable for Burgs' alleged negligence under the doctrine of respondeat superior. Burgs and Professional Staffing filed answers to the complaint and asserted, among other things, that Dawson's

---

[2] The Agreement also provided that it "shall be governed by and construed and enforced in accordance with the laws of the State of Tennessee, notwithstanding choice of law principles. The parties agree that the state and federal courts sitting in Davidson County, Tennessee, shall have sole and exclusive jurisdiction over any and all disputes arising from or in any way related to this Agreement, and both parties consent to those courts' jurisdiction and venue."

exclusive remedy was through workers' compensation.

¶5. Thereafter, an agreed order was entered granting Liberty Mutual permission to intervene, and Liberty Mutual filed an intervening complaint. Liberty Mutual asserted that it had paid benefits to Dawson and that it was entitled to reimbursement in the event Burgs or Professional Staffing were found liable.

¶6. In March 2021, Burgs and Professional Staffing filed a motion for summary judgment. They alleged in the motion, among other things, that Burgs was a "borrowed servant" of Dollar General at the time of the accident, and therefore Dawson's exclusive remedy was through workers' compensation. Attached to the motion for summary judgment was an affidavit that had been executed by the office manager for Professional Staffing—Barbara Johnson. She stated in her affidavit, in relevant part:

> Professional Staffing . . . had no control over the job assignments . . . Burgs was to perform once Dollar General accepted him as a temporary employee.
>
> Professional Staffing . . . had no supervisory responsibility for . . . Burgs once he was placed for employment with Dollar General.
>
> Burgs voluntarily accepted his assignment for employment at Dollar General.
>
> After being assigned to the position at Dollar General, . . . Burgs performed work on behalf of Dollar General and at their direction.
>
> . . . .
>
> The staffing agreement between Professional Staffing . . . and Dollar General memorializes that Professional Staffing . . . is not responsible for the supervision or safety training of . . . Burgs.
>
> . . . .
>
> Professional Staffing . . . did not own or furnish . . . Burgs with the "pallet

4

jack" at issue in this lawsuit. Professional Staffing . . . has no knowledge regarding the pallet jack and did not train (nor did they have a duty to train) . . . Burgs in the proper and safe use of that piece of equipment he was to use while working for Dollar General.

¶7. After a hearing, the circuit court granted the defendants' motion for summary judgment in August 2021. The circuit court noted that the parties agreed Burgs had accepted temporary employment with Dollar General and was performing work for Dollar General at the time of the accident. The court found that "[e]ven though Professional Staffing's agreement with Dollar General regarded . . . Burgs as an independent contractor and an employee of Professional Staffing, the reality of the workplace and the parties' actions . . . show[ed] that . . . Burgs was . . . a temporary employee . . ." and that Burgs was a "borrowed servant" for Dollar General. Ultimately, the circuit court held that Burgs was immune from liability as Dawson's "fellow servant" and that Professional Staffing was not vicariously liable for Burgs' actions. After the circuit court entered an order of dismissal, Dawson appealed.

**STANDARD OF REVIEW**

¶8. The "grant of summary judgment is reviewed de novo." *Wright v. R.M. Smith Invs. L.P.*, 210 So. 3d 555, 557 (¶6) (Miss. Ct. App. 2016) (citing *Thrash v. Deutsch, Kerrigan & Stiles LLP*, 183 So. 3d 838, 841 (¶10) (Miss. 2016)). "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id*. "The moving party bears the burden to show that no genuine issue of material fact exists, and the evidence must be viewed in the light most favorable to the nonmovant." *Id*.

5

**DISCUSSION**

¶9. We must decide whether the circuit court erred by granting summary judgment.

¶10. "The Mississippi Workers' Compensation Act (MWCA) affords employers immunity from tort liability in actions by employees due to its 'exclusive remedy' provision." Robert A. Weems & Robert M. Weems, *Mississippi Law of Torts* § 16:1.70 (2d ed. updated Dec. 2022) (citing Miss. Code Ann. § 71-3-9). "An employer that secures workers' compensation coverage that complies with the law enjoys immunity from suit in tort for an employee's injury." *Id*. "In general terms, other employers, their employees, and their agents at the worksite occupy the status of 'any other party' and are not protected by the exclusive remedy defense." John R. Bradley and Linda R. Thompson, Mississippi Workers' Compensation § 11:27 (2021). "This limited availability of the defense was established in the early cases and reiterated and strictly applied in later cases." *Id*.; *see Clark v. Luther McGill Inc*., 240 Miss. 509, 127 So. 2d 858, 862-63 (1961); *see also Index Drilling Co. v. Williams*, 242 Miss. 775, 137 So. 2d 525, 528 (1962). However, "[i]n some instances, when an injured worker filed a tort suit against another employer at the worksite, that defendant-employer . . . contended that because the worker had become its employee by loan from the actual employer . . . , the exclusive remedy defense protected it from the suit." Bradley & Thompson, Mississippi Workers' Compensation § 11:28. This is known as the loaned-employee, or borrowed-servant, doctrine.

¶11. "The borrowed-servant doctrine is a common-law rule that a servant, in general employment of one person, who is temporarily loaned to another person to do the latter's

6

work, becomes, for the time being, the servant of the borrower, although he remains in the general employment of the lender." *James v. Dedeaux*, 217 So. 3d 785, 787 (¶5) (Miss. Ct. App. 2017) (quoting *Gorton v. Rance*, 52 So. 3d 351, 359 (¶26) (Miss. 2011)); *see also Baldwin v. Kelly Servs. Inc.*, 121 So. 3d 275, 277 (¶7) (Miss. Ct. App. 2013). Our supreme court "has identified three criteria for determining whether one is a borrowed servant: (1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) whether the workman voluntarily accepted the special employment." *Id*. Under our law, if Burgs was a borrowed servant, Dawson's exclusive remedy would be through workers' compensation benefits. *Baldwin*, 121 So. 3d at 277 (¶7); *see also N. Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995). After reviewing the record before us and applying the above criteria, we agree with the circuit court's conclusion that no genuine issue of material fact existed regarding the finding that Burgs was a borrowed servant.

¶12. Dawson admitted that Burgs was performing work for Dollar General at the time of the accident and that Burgs had voluntarily accepted temporary employment at Dollar General.[3] As to the only factor that is seemingly in dispute—who controls or has the right to control the workman as to the work being performed—Dawson points to the agreement between Professional Staffing and Dollar General, which explicitly provided that "[a]ssigned employees are employees of [Professional Staffing] and shall not be considered or treated as employees of [Dollar General] by the parties." The dissent similarly points to the agreement

---

[3] Dawson agreed that these facts were undisputed in his response to the defendants' itemization of facts in support of their motion for summary judgment.

between Professional Staffing and Dollar General and asserts that the circuit court erred by granting summary judgment because there was a genuine issue of material fact as to whether Dollar General had exclusive control over Burgs.

¶13.    The agreement, however, was dated September 2018, and it provided that the initial terms of the agreement would continue for a period of one year. The accident in this case occurred in December 2019—*more than* one year later. Of more import, this Court has held that "the reality of the workplace and the parties' actions in carrying out a contract can impliedly modify, alter or waive express contract provisions." *James*, 217 So. 3d at 787-88 (¶8); *see also N. Elec. Co.*, 660 So. 2d at 1282. In this case, Burgs was under Dollar General's control and supervision. Burgs was trained by Dollar General and was performing the work of Dollar General at the time of the accident. This is evident from the affidavit and the training documents that were included in the record. "Where the movant [for summary judgment] demonstrates that no genuine issue of material fact exists, the nonmoving party 'must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial.'" *Robertson v. Houston*, 335 So. 3d 1082, 1084 (¶7) (Miss. Ct. App. 2021) (quoting *Wood v. Reynolds*, 316 So. 3d 208, 211 (¶17) (Miss. Ct. App. 2021)). Dawson, however, did not produce "significant probative evidence" that Dollar General did not have exclusive control over Burgs. All the factors support a finding that Burgs was a borrowed servant.

¶14.    This Court and our supreme court have held "summary judgment is appropriate where a temporary employment agency assigns an employee to another employer and the employee

performs the normal work of the second employer and is controlled and supervised by that employer." *Baldwin*, 121 So. 3d at 278 (¶9) (quoting *N. Elec. Co.*, 660 So. 2d at 1282).[4] "In Mississippi, one may be employed by more than one employer and both employers gain immunity from common-law negligence actions." *N. Elec. Co.*, 660 So. 2d at 1282. Because Burgs was a borrowed servant of Dollar General at the time of the accident, Dawson is limited to workers' compensation benefits as his exclusive remedy. *James*, 217 So. 3d at 788 (¶10). Furthermore, we agree with the circuit court's holding that Burgs was immune from liability as Dawson's "fellow servant" and that Professional Staffing was not vicariously liable for Burgs' actions. *McCluskey v. Thompson*, 363 So. 2d 256, 261 (Miss. 1978) (holding that "the Mississippi Workmen's Compensation Act should be construed to bar a suit by an injured employee against a fellow servant when the plaintiff is covered by the Act.").[5] As noted, both Dawson and Burgs had workers' compensation coverage. For these reasons, we find that the circuit court properly granted Burgs' and Professional Staffing's motion for summary judgment.

¶15. **AFFIRMED.**

---

[4] In *Baldwin*, Brad Montgomery, an employee of Kelly Services, was operating a forklift at the Faurecia Automotive Seating Inc. plant when a load of product became unstable and fell. *Baldwin*, 121 So. 3d at 276 (¶2). Mark Baldwin, a Faurecia employee, was injured as a result. *Id*. "Baldwin collected workers' compensation benefits through his employer, Faurecia[,]" and then he filed a complaint against Montgomery and Kelly Services. *Id*. at (¶3). The defendants "filed a motion for summary judgment alleging that Baldwin's exclusive remedy . . . was workers' compensation." *Id*. The circuit court granted summary judgment based on the finding that Montgomery was a borrowed servant, and this Court affirmed. *Id*. at 276, 278 (¶¶3, 9).

[5] In *Choctaw Inc. v. Wichner*, 521 So. 2d 878, 880-82 (Miss. 1988), the supreme court receded from *McCluskey* on the issue of consortium.

9

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

**WESTBROOKS, J., DISSENTING:**

¶16. I believe the circuit court erred in granting summary judgment in this case. Because the record reflects genuine questions of material fact that are in dispute, I respectfully dissent from the majority's opinion.

¶17. Summary judgment is appropriate if the record shows "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Health Mgmt. Assocs. Inc. v. Weiner*, 264 So. 3d 747, 749 (¶10) (Miss. 2019) (quoting M.R.C.P. 56). "In making such a determination, the evidence must be viewed in the light most favorable to the nonmoving party." *Id*. "This Court may reverse the trial court's decision to grant summary judgment if a legal issue was incorrectly decided or if material facts are in dispute." *Colbert v. Miss. Marine Corp.*, 755 So. 2d 1116, 1120 (¶11) (Miss. Ct. App. 1999) (quoting *Clark v. St. Dominic-Jackson Mem'l Hosp.*, 660 So. 2d 970, 972 (Miss. 1995); *Radmann v. Truck Ins. Exch.*, 660 So. 2d 975, 977 (Miss. 1995)). And "issues of fact . . . also exist where . . . the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed." *Dennis v. Searle*, 457 So. 2d 941, 944 (Miss. 1984).

¶18. Whether an employee is a borrowed employee for purposes of liability is a question of law for the court to determine. *Colbert*, 755 So. 2d at 1120 (¶12); *accord Lemaire v. Danos & Curole Marine Contractors Inc.*, No. 00-31153, 2001 WL 872840, at *3 (5th Cir.

10

July 10, 2001). "However, 'in some cases, factual disputes must be resolved before the [trial] court can make its legal determination.'" *Lemaire*, 2001 WL 872840, at *3 (quoting *Billizon v. Conoco Inc.*, 993 F.2d 104, 105 (5th Cir. 1993)). Issues of fact that preclude summary judgment may be present when the borrowed-employee status is in question. *Roberts v. Northrop Grumman Ship Sys. Inc.*, 108 So. 3d 471, 473 (¶¶5,7) (Miss. Ct. App. 2013); *accord Gaudet v. Exxon Corp.*, 562 F.3d 351, 358 (5th Cir. 1977).

¶19.    A borrowed servant becomes the employee of the borrower to the exclusion of the lender. *Quick Change Oil & Lube Inc. v. Rogers*, 663 So. 2d 585, 589 (Miss. 1995). "If the lender [(here, Professional Staffing)] is to escape liability, it must appear that the servant is under the borrower's [(Dollar General's)] *exclusive control and direction* as to the work in progress." *Id*. (emphasis added). To that end, the Supreme Court has established three important questions for determining whether a person is a borrowed employee: "(1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) has the workman voluntarily accepted the special employment." *Id*. (citing Vardaman S. Dunn, Mississippi Workers' Compensation Law § 186 (1986)); *James v. Dedeaux*, 217 So. 3d 785, 787 (¶5) (Miss. Ct. App. 2017) (quoting *Gorton v. Rance*, 52 So. 3d 351, 359 (¶26) (Miss. 2011)). In the present case, a genuine issue of material fact exists regarding whether Dollar General had *exclusive* control over Burgs. In the signed contract between Professional Staffing and Dollar General, multiple provisions place limits on the work Burgs could perform. These provisions include limits to Burgs' ability to operate "any vehicle or forklift" without the written permission of Professional

11

Staffing—permission that was nowhere to be found in the record. A second provision limits his ability to handle money, and another provision specifically notes that Burgs should not be considered an employee of Dollar General. Taken together, these provisions demonstrate the amount of control Professional Staffing held over Burgs, and provide a genuine dispute of material fact that should preclude summary judgment.

¶20. In *Roberts*, this Court faced a similar question of whether an injured employee was a borrowed employee of Northrop Grumman Ship Systems (NGSS). *Roberts*, 108 So. 3d at 473 (¶5). The employee was hired by Ameri-Force Craft Services, a labor broker, and assigned by Ameri-Force to the NGSS job. *Id*. at 472 (¶¶2-3). The employee was injured and received workers' compensation benefits through Ameri-Force. *Id.* at (¶3). He later brought a negligence suit against NGSS for his injury. *Id*.

¶21. In *Roberts*, this Court looked at the contract between Ameri-Force and NGSS, and found that it contained the following provision:

> Independent Contractor Status
>
> At all times . . . , the parties agree that [Ameri-Force] is and shall remain an independent contractor and that [Ameri-Force] including, (sic) its administrative employees and/or Contract Labor assigned to Northrop Grumman, is not an employee, agent, joint venture or partner of Northrop Grumman. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Northrop Grumman and [Ameri-Force] including its Contract Labor. . . .

*Id*. at 474 (¶8). The Court then stated that "[p]rovisions of this nature have been found to create a fact issue sufficient to deny summary judgment when other factors do not overwhelmingly support borrowed employee status." *Id*. (citing *West v. Kerr-McGee Corp*.,

765 F.2d 526, 531 (5th Cir. 1985); *Alday v. Patterson Truck Line Inc.*, 750 F.2d 375, 378 (5th Cir. 1985)). The Court continued by stating, "On the other hand, where other factors clearly support the existence of a borrowed employee relationship, summary judgment would be proper as the question is universally considered a matter of law." *Id*.

¶22. The court ultimately found that the employee was a borrowed employee of NGSS and affirmed summary judgment. *Id*. One fact that the court found particularly germane to its analysis was that the employee had no further contact with Ameri-Force after he began work for NGSS. *Id*. at 475 (¶8). The court also noted that no additional facts disputed that the employee was under the exclusive control and direction of NGSS. *Id*. at 474 (¶8). In the end, the *Roberts* court determined that the single contractual provision did not outweigh the other facts regarding who had exclusive control of the employee. *Id*. at 475 (¶8).

¶23. Similarly, in the present case, such provisions also exist in the contract. But unlike *Roberts,* it cannot be said that other factors "overwhelmingly" or "clearly" support Burgs' status as a borrowed employee. Burgs' contract with Professional Staffing expressly states that Burgs shall remain exclusively the employee of Professional Staffing. The contract specifically states:

> Assigned Employees are employees of [Professional Staffing] and shall not be considered or treated as employees of [Dollar General] by the parties. Nothing contained in this Agreement shall entitle Assigned Employees to any benefits or compensation from [Dollar General]. As a condition of their assignment, [Professional Staffing] must require Assigned Employees to acknowledge in writing that they are employees of [Professional Staffing], not [Dollar General], and are not entitled to participate in any of [Dollar General]'s benefit plans.

¶24. In addition to this provision, a separate provision in the contract prohibited

13

Professional Staffing employees such as Burgs from handling "cash, checks, keys, credit cards or negotiable instruments" on behalf of Dollar General. Burgs' contract prohibited Burgs from "us[ing] any vehicle or forklift, regardless of ownership, in connection with the performance of services for [Dollar General] unless [Professional Staffing] has given prior written approval to [Dollar General]." The record contains no written permission from Professional Staffing for Burgs to use the pallet jack, a glaring violation of this contractual provision. During oral argument, the question of whether Professional Staffing granted Burgs permission to use the pallet jack was specifically posed. Professional Staffing could give no definitive answer. Finally, Burgs was paid by Professional Staffing, who, per the contract, also bore the responsibility for his insurance and retirement benefits (if he was entitled to any).

¶25.    The majority correctly states that "the reality of the workplace and the parties' actions in carrying out a contract can impliedly modify, alter or waive express contract provisions." *Ante* at ¶13 (quoting *James*, 217 So. 3d at 787-88 (¶8)). But it is the reality of the workplace in this case that is in question. The majority points to a part of the record that shows Burgs was trained by Dollar General and performing their work as supporting its determination that Burgs was under Dollar General's control. *Ante* at ¶13. But these facts do not indicate that in reality, Burgs was under Dollar General's *exclusive* control as the borrowed servant doctrine requires. Nor do they negate the multiple contractual provisions that indicate Professional Staffing exerted significant control over Burgs, including the fact that Burgs was paid by Professional Staffing.

14

¶26.    Additionally, the majority makes much of one contract provision because it provides "[t]he initial term of this Agreement shall commence on the date first set forth above and shall continue thereafter for a period of one (1) year."[6] *See ante* at ¶13.  But the contract also contains a "survival provision," which states, "Any respective obligations . . . hereunder which by their nature would continue beyond the termination, cancellation or expiration of this Agreement shall survive such termination, cancellation or expiration . . . ."  Presumably this would include matters such as which company paid Burgs and who was responsible for his insurance, amongst other obligations.  There is nothing in the record to suggest that the parties were not continuing to operate under their contract.  Furthermore, the existence and extent of a contract are questions of fact.  *In re Conservatorship of Redd v. Redd*, 332 So. 3d 250, 257 (¶28) (Miss. 2021); *Banking Grp. Inc. v. S. Bancorp Bank*, No. 2021-CA-01077-COA, 2022 WL 17422166, at *8 (¶32) (Miss. Ct. App. Dec. 6, 2022).  And "[w]here doubt exists as to whether there is a genuine issue of material fact, the trial judge should err on the side of denying the motion and permitting a full trial on the merits."  *Renner v. Retzer Res. Inc.*, 236 So. 3d 810, 815 (¶21) (Miss. 2017).  Triable issues of fact remain in this case.

¶27.    Ultimately, in the present situation, the record is far from clear on whether Dollar General had "exclusive control" over Burgs.  The contract appears to provide Professional Staffing with extensive control over what Burgs could or could not do.  This is in stark opposition to the affidavit of Barbara Johnson, the office manager for Professional Staffing,

---

[6] No day is specified in the contract. September 2018 is listed in the body of the contract, but the blank for what day in September is not filled in.  The final signature on the contract was dated October 29, 2018.  The accident happened in December 2019.

who swore that Professional Staffing had no control over job assignments for Burgs. And unlike in *Roberts*, Professional Staffing undoubtedly had continuous communication with Burgs since it paid his wages and was responsible for any benefits he was entitled to. Additionally, the lack of any answer to the question of whether Professional Staffing gave written permission to Burgs to operate the pallet jack shows that the "purported establishment of the facts [is] sufficiently incomplete" in a manner that should preclude summary judgment. Needless to say, these facts must be viewed in the light most favorable of Dawson at the summary judgment phase. *Health Mgmt. Assocs.*, 264 So. 3d at 749 (¶10). I believe the trial court was too hasty in granting summary judgment in this case. Because of the foregoing disputes in genuine issues of material fact, I do not find that summary judgment was appropriate. Therefore, I respectfully dissent.

**McDONALD, J., JOINS THIS OPINION.**

16