# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00756-COA

CLAUDIA ADAMS                                                          APPELLANT

v.

HINDS COUNTY SCHOOL DISTRICT                                          APPELLEE

DATE OF JUDGMENT:            06/07/2024
TRIAL JUDGE:                 HON. JAMES D. BELL
COURT FROM WHICH APPEALED:   HINDS COUNTY CIRCUIT COURT,
                             SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:     JOHN HUNTER STEVENS
                             AMANDA JEPSEN HARP
ATTORNEYS FOR APPELLEE:      MELTON JAMES WEEMS
                             ANNA GRACE BUCK
NATURE OF THE CASE:          CIVIL - PERSONAL INJURY
DISPOSITION:                 AFFIRMED - 09/30/2025
MOTION FOR REHEARING FILED:

## BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

## WILSON, P.J., FOR THE COURT:

¶1.    Claudia Adams was injured while working in the cafeteria at Utica Elementary

School.  She settled a workers' compensation claim with her employer, Staffing Solutions

Ltd., and later filed a tort action against the Hinds County School District (HCSD).  The

circuit court granted summary judgment in favor of HCSD, ruling that Adams was HCSD's

borrowed employee and that her exclusive remedy was workers' compensation.  Adams

appeals, arguing that she was not a borrowed employee.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Staffing Solutions is an employment agency that provides staff and temporary workers

to fit employers' needs. Staffing Solutions contracted with HCSD to provide staff for school cafeterias. The contract required Staffing Solutions to "recruit, interview, select, hire and assign employees to [HCSD] to provide food service related services." Staffing Solutions would also "conduct any additional screening requested by [HCSD]" and "be available to discuss and service staffing requirements on a daily basis." Staffing Solutions also agreed to:

1. Maintain all necessary personnel and payroll records for its employees;
2. Calculate their wages and withhold taxes and other government mandated charges, if any;
3. Remit such taxes and charges to the appropriate government entity;
4. Pay net wages and fringe benefits, if any, directly to its employees on a weekly basis . . . ;
5. Provide for liability and fidelity insurance . . . , and
6. Provide workers' compensation insurance coverage in amounts as required by law.

¶3. HCSD would conduct all fingerprinting and background checks, approve workers' time sheets, and train new employees. Staffing Solutions and HCSD agreed that "[e]mployees of Staffing Solutions are assigned to the District on a temporary basis."

¶4. On August 2, 2018, Claudia Adams signed a contract with Staffing Solutions to work as a "Child Nutrition Technician" at Utica Elementary School. Her responsibilities included cooking, serving meals, and cleaning the cafeteria after breakfast and lunch. In addition, she would "[a]ssist [HCSD's cafeteria] manager with all duties as assigned" and "[a]ttend training meetings as required." Adams was required to "call Staffing Solutions . . . and [her] cafeteria supervisor" if she would be tardy or absent on a particular day. If HCSD's cafeteria manager believed Adams was too sick to work, the manager could require her "to take a

2

sick/personal day in the best interest of the school district." Adams signed a "General Confidentiality Agreement" with HCSD "as an employee directly employed or contracted employee of a third party contractor." She agreed to "preserve the confidentiality" of any health information and other confidential information and that a breach could "result in disciplinary action up to termination of employment/assignment."

¶5. On August 7, 2018, Adams was serving lunch when she was injured by a ceiling tile that fell on her head and neck. Adams filed a workers' compensation claim against Staffing Solutions, which she ultimately settled for a lump sum.

¶6. In October 2019, Adams sued HCSD in Hinds County Circuit Court, alleging that HCSD was negligent and created a dangerous condition. In its answer, HCSD asserted the affirmative defense that Adams was its borrowed employee and her exclusive remedy was workers' compensation benefits. *See* Miss. Code Ann. § 71-3-9 (Supp. 2022).

¶7. David Smith, a manager at Staffing Solutions, testified in his deposition that HCSD developed job descriptions for all positions that it contracted with Staffing Solutions to fill. Staffing Solutions had no input on the job duties created by HCSD, and HCSD provided "all" training for the workers. He agreed that a worker at a cafeteria "would be subject to the control of their supervisor at the Hinds County School District." He testified that Staffing Solutions did not provide an employee to help oversee day-to-day cafeteria operations at the schools and plays no role in the "day-to-day work at [HCSD's] cafeterias." Smith characterized his role, on behalf of Staffing Solutions, as "basically the HR person for [the] employees" assigned to him. HCSD was in charge of background checks and fingerprinting

3

and retained the authority to terminate a worker for various reasons.

¶8.    Adams testified that cafeteria manager Brenda Smiley, an HCSD employee, posted Adams's daily work duties. Adams testified that Smiley created the daily task list and directed the specific tasks she and other employees performed each day. Adams's duties included preparing meals, cleaning the cafeteria, and unloading the delivery truck.

¶9.    Adams asserted that although Smiley posted the workers' daily duties, "all [her (i.e., Adams's)] orders had to come" from Smith. However, Adams acknowledged that she had no personal knowledge about how Smiley assigned daily work duties. Adams said that Smiley was "in charge of the cafeteria" but could "only make decisions with Hinds County workers." As an example, she said that one day she was assigned to cook chicken tetrazzini; she "knew [she] couldn't do it," so she first complained to Smiley, who told her to call Smith. Adams stated that although Smiley was the manager of the cafeteria, the workers were required to report "any issues [they] had" to Smith—that was the "protocol." Nonetheless, Adams acknowledged that she followed Smiley's instructions in the performance of her day-to-day tasks.

¶10.    On the day she was injured, Adams noticed "an open space" in the ceiling. Later, she saw a custodian and a principal placing tiles in the ceiling. As Adams was serving lunch, a wet ceiling tile fell on her head and neck. Smiley took Adams to the school nurse and called Smith. Smith advised her to seek medical treatment, and both Smiley and Smith filed incident reports. Adams later learned a leaking air conditioner caused the tile to fall.

¶11.    HCSD filed a motion for summary judgment, arguing that Adams was a borrowed

employee of HCSD and that her suit was barred by the exclusive-remedy provision of the Workers' Compensation Act. Miss. Code Ann. § 71-3-9. The circuit court granted HCSD's motion, ruling that there were no genuine issues of material fact, that Adams was a borrowed employee, and that workers' compensation benefits were her exclusive remedy. Adams filed a notice of appeal.

## ANALYSIS

¶12. We review an order granting summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). Summary judgment "shall" be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Indeed, "the court must grant summary judgment unless . . . the record demonstrates at least the minimum quantum of evidence sufficient to justify a determination in favor of the non-moving party by a reasonable juror." *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1274 (¶19) (Miss. 2007) (footnote omitted). The non-moving party "may not rest upon the mere allegations or denials of his pleadings" and must respond with competent evidence of "specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

¶13. Under the Workers' Compensation Act, an employer's liability "to pay compensation [under the Act] shall be exclusive and in place of all other liability of such employer to the employee." Miss. Code Ann. § 71-3-9. Therefore, an employer covered by the Act who

obtains workers' compensation coverage in compliance with the Act is immune from liability in tort for injuries sustained by an employee in the course and scope of her employment. In addition, our Supreme Court has held that a worker "may be employed by more than one employer and both employers gain immunity from common-law negligence actions." *N. Elec. Co. v. Phillips*, 660 So. 2d 1278, 1282 (Miss. 1995). The Court stated that this immunity applies and "[s]ummary judgment is appropriate where a temporary employment agency assigns an employee to another employer and the employee performs the normal work of the second employer and is controlled and supervised by that employer." *Id.*

¶14. For example, in *Northern Electric Co.*, "Kelly Services . . . employed Phillips to work with Northern Electric Company (NECO) temporarily as a maintenance helper and to perform other assigned tasks." *Id.* at 1279. Six weeks later, Phillips was injured while working for NECO. *Id.* The Supreme Court held that Phillips was NECO's "loaned" or "borrowed" employee "even though [he] was not NECO's 'actual' employee" because he "was on loan on a temporary basis," "was subject to [NECO's] control," and "received supervision and work assignments from NECO supervisors." *Id.* at 1281-82. The Court held that because Phillips was NECO's borrowed employee, NECO and Kelly were both immune from suit in tort, and Phillips's tort claims against NECO were barred by the exclusive-remedy provision of the Workers' Compensation Act. *Id.* at 1282.

¶15. Similarly, in *James v. Dedeaux*, 217 So. 3d 785 (Miss. Ct. App. 2017), Constructor Services Inc. (CSI) hired Dedeaux and assigned him to work for Aladdin Construction Co. on a construction project. *Id.* at 786 (¶1). After Dedeaux injured James, an Aladdin

employee, James sued Dedeaux and CSI for negligence. *Id.* at (¶2). However, the circuit court held that James's suit was barred by the exclusive-remedy provision of the Workers' Compensation Act because Dedeaux was a borrowed employee of Aladdin and thus a fellow employee of James. *Id.* On appeal, this Court affirmed. *Id.* at 788 (¶10). We stated that "[t]he Mississippi Supreme Court 'has identified three criteria for determining whether one is a borrowed servant: (1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) whether the workman voluntarily accepted the special employment." *Id.* at 787 (¶5). There was no dispute that Dedeaux was performing Aladdin's work on the construction site, and "Dedeaux voluntarily accepted the special employment" with Aladdin. *Id.* at 787-88 (¶¶6, 10). In addition, we held that although certain parts of the contract between CSI and Aladdin suggested that CSI would supervise and control its employees, "the evidence as to the actual conditions" at the construction site showed that Aladdin supervised and controlled Dedeaux. *Id.* at 787 (¶7). We emphasized that Dedeaux "knew from the beginning that he would be assigned to an Aladdin job," and he "was evaluated by . . . and received work assignments from the Aladdin supervisors." *Id.* We also rejected James's argument "that Dedeaux was never truly under the control of Aladdin" because "CSI maintained the ultimate authority to terminate Dedeaux from its employment." *Id.* at 788 (¶9). We explained:

> [T]he Mississippi Supreme Court has held without reservation that temporary employment situations present a clear-cut case. In *Northern Electric Company*, 660 So. 2d at 1282, the supreme court held: "Summary judgment is appropriate where a temporary employment agency assigns an employee to another employer and the employee performs the normal work of the second employer and is controlled and supervised by that employer."

7

*James*, 217 So. 3d at 788 (¶9).

¶16.    Finally, in *Dawson v. Burgs*, 373 So. 3d 759 (Miss. Ct. App. 2023), *cert. denied*, 404 So. 3d 1134 (Miss. 2023), Dawson and Burgs were hired by two different staffing agencies and then assigned to work in the same Dollar General warehouse.  *Id.* at 760 (¶2).  After Burgs injured Dawson, Dawson sued Burgs and Professional Staffing Co., the agency that hired Burgs, for negligence.  *Id.* at 761-62 (¶¶4).  The circuit court held that the exclusive-remedy provision of the Workers' Compensation Act barred Dawson's tort claim because he and Burgs were Dollar General's borrowed servants at the time of the injury.  *Id.* at 762 (¶7).  This Court affirmed on appeal.  *Id.* at 764-65 (¶14).  As in *James*, the evidence was clear that Burgs and Dawson had voluntarily accepted their special employment and were performing Dollar General's work.  *Id.* at 763-64 (¶12).  Dawson argued that Burgs was not Dollar General's borrowed employee because Dollar General's contract with Professional Staffing specifically stated that Professional Staffing's employees would "*not* be considered or treated as employees of Dollar General by the parties."  *Id.* at 764 (¶12) (emphasis added) (brackets omitted).  However, as in *James*, the evidence of the actual conditions at the job site showed that "Burgs was under Dollar General's control and supervision."  *Id.* at (¶13).  We again emphasized that "[t]his Court and our supreme court have held 'summary judgment is appropriate where a temporary employment agency assigns an employee to another employer and the employee performs the normal work of the second employer and is controlled and supervised by that employer.'"  *Id.* at (¶14) (quoting *Baldwin v. Kelly Servs. Inc.*, 121 So. 3d 275, 278 (¶9) (Miss. Ct. App. 2013) (quoting *N. Elec. Co.*, 660 So. 2d at 1282))).

8

¶17.    In this case, it is clear that Adams was performing the work of HCSD by helping to prepare and serve lunches to its students.  In addition, it is equally clear that Adams knew she would be assigned to HCSD and voluntarily accepted employment at Utica Elementary School.  We do not understand Adams to dispute that either of these criteria is satisfied.  Rather, Adams argues that she was not HCSD's borrowed employee because she was not subject to HCSD's control and supervision.

¶18.    However, the "evidence as to the actual conditions under which [Adams] worked" in the school cafeteria shows that Adams was subject to HCSD's control and supervision.  *James*, 217 So. 3d at 787 (¶7).  To begin with, the contract between Staffing Solutions and HCSD shows that Staffing Solutions's primary role was to provide employees, process payroll, and provide workers' compensation insurance.  In contrast, HCSD was responsible for training and supervising the employees on a day-to-day basis.  David Smith of Staffing Solutions testified that Adams was subject to the control and supervision of HCSD's cafeteria manager.  Indeed, Smith testified that Staffing Solutions played no role in the day-to-day operations of the cafeteria.  HCSD determined the job duties and created the job description for each position, and Staffing Solutions simply provided an employee to fill the position.  Although Staffing Solutions retained the ultimate authority to terminate Adams's employment, that does not alter the fact that HCSD supervised and controlled Adams's work on a day-to-day basis.  *Id.* at 788 (¶9).  Moreover, HCSD had the contractual right to insist that any employee be removed from her employment in the cafeteria.

¶19.    In her deposition, Adams testified about one incident in which she was assigned to

9

cook chicken tetrazzini; she "knew [she] couldn't do it," so she complained to Smiley, who told her to call Smith. This was consistent with Smith's testimony that he was responsible for addressing "little squabbles" and conflicts involving employees assigned to the cafeteria. Otherwise, Adams offered only conclusory assertions, unsupported by any specific facts, that Smith was her supervisor. Nonetheless, Adams acknowledged that Smiley, the cafeteria manager and an HCSD employee, posted her daily work duties. Adams testified that Smiley created the daily task list and directed the specific daily tasks that she and other employees were to perform. Adams also acknowledged that she followed Smiley's instructions in the performance of day-to-day tasks. The contract between Staffing Solutions and HCSD and the deposition testimony of Smith and Adams show that this is a typical case in which a temporary employee hired by a professional staffing agency is considered a borrowed employee of the employer to which she is assigned. Again, "the Mississippi Supreme Court has held without reservation that temporary employment situations present a clear-cut case." *James*, 217 So. 3d at 788 (¶9). "In *Northern Electric Company*, 660 So. 2d at 1282, the [S]upreme [C]ourt held: 'Summary judgment is appropriate where a temporary employment agency assigns an employee to another employer and the employee performs the normal work of the second employer and is controlled and supervised by that employer.'" *Id.*; *accord Dawson*, 373 So. 3d at 764 (¶14); *Baldwin*, 121 So. 3d at 278 (¶9). The facts of this case are squarely within the Supreme Court's holding. Accordingly, the circuit court did not err by granting HCSD's motion for summary judgment.

¶20. **AFFIRMED.**

10

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**